JAMES GRIFFIN, Plaintiff-Appellant, v. BRENDA R. WILLOUGHBY, Defendant-Appellee.

Fourth District    No. 4—06—0415

Argued November 16, 2006.—Opinion filed December 15, 2006.

406

Gary F. Geisler (argued), of Geisler Law Offices, of Decatur, for appellant.

Howard W. Small and Stanley E. Freeman (argued), both of Law Office of Ansel & Small, Ltd., of Champaign, for appellee.

JUSTICE COOK delivered the opinion of the court:

On April 26, 2005, plaintiff, James Griffin, filed a complaint against defendant, school-bus driver Brenda R. Willoughby, alleging her negligence in a collision that occurred on February 18, 2004. The trial court dismissed the suit with prejudice.

On appeal, plaintiff contends the one-year limitations period found in section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8—101 (West Supp. 2003)) does not apply to his action. Alternatively, plaintiff urges defendant was equitably estopped from asserting the limitations period and the limitations period was equitably tolled. Because section 8—101's one-year limitations period applies and neither equitable estoppel nor equitable tolling precludes its enforcement, we affirm.

## I. BACKGROUND

On April 26, 2005, plaintiff filed a complaint against defendant, alleging defendant's negligence in a collision that occurred on February 18, 2004, between plaintiff's vehicle and the school bus defendant was driving. Defendant moved to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2004)), urging plaintiff's complaint was barred by the one-year limitations period contained in section 8—101 of the Tort Immunity Act. 745 ILCS 10/8—101 (West Supp. 2003). In an accompanying affidavit, defendant attested she was transporting students in the course of her

employment with the Okaw Valley Community Unit School District (school district) at the time of the collision.

On October 3, 2005, plaintiff filed an amended complaint, adding allegations that he delayed filing suit because he relied on statements made by Indiana Insurance Company (insurance company), the school district's insurance carrier. Plaintiff claimed his attorney communicated with the insurance company at various times between March 15, 2004, and April 20, 2005. Plaintiff asserted the insurance company led him to believe it intended to settle the claim for a reasonable amount but needed more information for its file. He alleged that on April 20, 2005, the insurance company's adjuster, Janice King, announced her company was denying his claim because he did not file suit within one year of the collision.

Defendant again moved to dismiss. In an attached affidavit, King attested that she began handling plaintiff's claim on May 17, 2004, and tried to call plaintiff's attorney, Gary Geisler, on several occasions before receiving a letter from Geisler dated July 21, 2004. King stated no further communication occurred from late July 2004 to early December 2004. She received a letter from Geisler dated December 1, 2004, but then had no further communication with Geisler until April 20, 2005, when she called him to inquire whether he had filed suit. King attested Geisler said he had not been aware that school-bus accidents were governed by a one-year limitations period.

King attached to her affidavit the two letters from Geisler. In the July letter, Geisler wrote to update King regarding the status of plaintiff's injuries, stating he would forward plaintiff's medical bills and records when he received them. Geisler provided the names of three physicians and a chiropractor who had treated plaintiff. In December 2004, Geisler informed King that plaintiff had continuing pain and injuries, his present medical bills totaled $17,828.44, and the workers' compensation lien was $15,864.69. Geisler also named another physician and attached a list of health-care providers and total charges for each to date. He closed, "We are authorized to settle this case for $150,000.00. Please advise."

King also attached three letters that predated her assignment to the claim. In a letter dated March 15, 2004, Geisler wrote to inform the insurance company that he represented plaintiff and inquired about the policy limits for the collision. Senior claim representative Pam Kalfen acknowledged the receipt of Geisler's attorney's lien in a letter dated March 22, 2004. Kalfen asked plaintiff to execute a medical- and wage-authorization form and to provide the names and addresses of plaintiff's treating physicians. Kalfen requested that Geisler forward plaintiff's "supporting material," writing, "When we

have received this information, we will be in contact with your office." Finally, in a letter dated April 7, 2004, Geisler wrote that he was enclosing plaintiff's medical records for services related to the collision, advising, "I will forward the medical bills and summary once we have received them ***." He again asked the insurance company to disclose the policy limits.

Plaintiff responded to defendant's motion with Geisler's affidavit. Geisler attested that plaintiff received a letter dated February 20, 2004, from the insurance company, which resulted in correspondence between Geisler and Kalfen in letters dated March 15, March 22, and April 7, 2004. Geisler stated Kalfen called him on April 15, 2004, to tell him that the policy limit was $1 million for bodily injury and that Geisler should forward plaintiff's medical records and bills. Geisler attested he received a letter from King dated May 18, 2004. That letter simply advised King was the new adjuster handling the claim.

Geisler disagreed that he had no contact with the insurance company between his July and December 2004 letters. Rather, he stated he mailed almost all of plaintiff's medical bills and records to King on September 7, 2004; he did not include the records from Decatur Memorial Hospital because he had not yet received them. Geisler attested he followed up his December 1, 2004, letter with a phone call on December 17, 2004, leaving a message to inquire about "the status of the case in response to [plaintiff's] settlement demand." Geisler wrote to King on March 21, 2005, to "inquire about [the insurance company's] position about the settlement of the case."

Geisler attested that King's phone call of April 20, 2005, was the first time anyone with the insurance company contended it was asserting the Tort Immunity Act's one-year limitations period. Geisler explained he had been awaiting the insurance company's response to his last three letters and phone call and had assumed it was in the process of responding with a settlement offer. Geisler attached copies of all the correspondence he referenced in his affidavit.

On December 23, 2005, the trial court granted defendant's motion to dismiss because the limitations period from the Tort Immunity Act applied to plaintiff's cause of action. The court also found plaintiff did not establish equitable estoppel because (1) plaintiff did not show any conduct or action by defendant or the insurance company amounting to misrepresentation or concealment of a material fact and (2) plaintiff did not show any conduct by defendant or the insurance company that could have been intended or reasonably expected to cause plaintiff to delay filing his cause of action. The court entered a written order on January 9, 2006. Later that month, plaintiff filed a motion to reconsider, which the court denied. In April 2006, plaintiff filed a

second motion to reconsider pursuant to the "new" legal theory of equitable tolling. The court denied that motion as well. This appeal followed.

## II. ANALYSIS

### A. Section 8—101

"Under section 2—619(a)(5) of the Code, a defendant is entitled to a dismissal if the 'action was not commenced within the time limited by law.' " *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 359, 823 N.E.2d 610, 616 (2005), quoting 735 ILCS 5/2—619(a)(5) (West 2002). "A motion to dismiss pursuant to section 2—619 of the Code admits the legal sufficiency of the complaint but asserts affirmative matter to avoid or defeat the claim." *Lamar*, 355 Ill. App. 3d at 359, 823 N.E.2d at 616. When ruling on such a motion, a court must interpret all pleadings and supporting documents in the light more favorable to the nonmoving party. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 5, 820 N.E.2d 401, 404 (2004). Both the decision to dismiss a complaint and the interpretation of a statute are subject to *de novo* review. *Paszkowski*, 213 Ill. 2d at 6, 820 N.E.2d at 404. "[T]he question on appeal is whether there is a genuine issue of material fact and whether [a] defendant is entitled to judgment as a matter of law." *Mitchell v. State Farm Fire & Casualty Co.*, 343 Ill. App. 3d 281, 284, 796 N.E.2d 617, 619 (2003).

■ "[S]ection 9—102 [of the Tort Immunity Act] clearly requires a local public entity to pay any tort judgment or settlement for compensatory damages for which its employee acting within the scope of his employment is liable." *Sperandeo v. Zavitz*, 365 Ill. App. 3d 691, 694, 850 N.E.2d 394, 397 (2006). However, section 8—101 of the Tort Immunity Act provides "[n]o civil action *** may be commenced *** against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8—101(a) (West Supp. 2003). The purpose of the limitations period "is to encourage early investigation into a claim *** when the matter is still fresh, witnesses are available, and conditions have not materially changed. Such an investigation permits prompt settlement of meritorious claims and allows governmental entities to plan their budgets in light of potential liabilities." *Ferguson v. McKenzie*, 202 Ill. 2d 304, 313, 780 N.E.2d 660, 665 (2001). "Thus, in order for a plaintiff to recover against a county employee acting within the scope of his employment, the plaintiff must file suit within one year, even if he is seeking to recover against the county employee only in his individual capacity." *Spe-*

*randeo*, 365 Ill. App. 3d at 694, 850 N.E.2d at 397. Plaintiff makes two arguments as to why section 8—101 should not apply.

### 1. *Quasi Immunity*

Plaintiff first contends the limitations period contained in section 8—101 is a "quasi immunity," citing no legal authority for that proposition but offering an analysis akin to that used to determine whether sovereign immunity shields a state employee. Plaintiff urges section 8—101 does not apply to his action against defendant because her alleged negligence arose from her operation of a motor vehicle, and she was under a legal duty to exercise ordinary care in that regard, irrespective of her employment by the school district.

Plaintiff's position is clearly based on *Currie v. Lao*, 148 Ill. 2d 151, 159, 592 N.E.2d 977, 980 (1992), where the Illinois Supreme Court concluded the proper inquiry in determining whether sovereign immunity shields a state employee from liability for on-the-job negligence is to analyze the source of the duty the employee is charged with breaching. In *Currie*, the court noted that claims based on a state employee's negligent operation of an automobile are generally outside the doctrine of sovereign immunity because negligence that arises from the ordinary operation of a motor vehicle is based on the breach of the duties every driver owes to every other driver. *Currie*, 148 Ill. 2d at 160, 592 N.E.2d at 980-81.

*Racich v. Anderson*, 241 Ill. App. 3d 336, 608 N.E.2d 972 (1993), demonstrates plaintiff's focus on the nature of defendant's actions and accompanying duties is misplaced. In that case, the plaintiff filed a complaint against the defendant in her individual capacity nearly 18 months after the school bus she was driving collided with the plaintiff's vehicle. *Racich*, 241 Ill. App. 3d at 337, 608 N.E.2d at 972. The trial court dismissed the plaintiff's complaint with prejudice based on section 8—101's one-year limitations period. *Racich*, 241 Ill. App. 3d at 337, 608 N.E.2d at 972. On appeal, the plaintiff cited *Currie* and argued his suit charged the defendant with breaching a duty imposed on her independent of her employment as a school-bus driver. *Racich*, 241 Ill. App. 3d at 338-39, 608 N.E.2d at 973-74. The appellate court found the trial court correctly determined the plaintiff's cause of action was time-barred pursuant to section 8—101 and noted whether the defendant would have been entitled to invoke a sovereign-immunity defense was a separate question. *Racich*, 241 Ill. App. 3d at 339-40, 608 N.E.2d at 974.

Plaintiff's contention essentially is that if defendant would not be immune for her actions, the limitations period in section 8—101 of the Tort Immunity Act should not apply. However, *Racich* demonstrates

that the limitations period and the likely success of an immunity defense are not connected. Plaintiff's contention that section 8—101 is a "quasi immunity" to which defendant is not entitled is without merit.

## 2. Two-Year Statute of Limitations

■ Section 13—202 of the Code provides that personal-injury actions must be commenced within two years after the cause of action accrued. 735 ILCS 5/13—202 (West 2004). Plaintiff argues the one-year limitations period in section 8—101 and the two-year limitations period in section 13—202 both potentially apply; focusing on the nature of the cause of action, rather than solely on defendant's status as an employee of a public entity, reveals section 13—202 is more specific to the present case.

Plaintiff's argument rests on the dissent authored by Justice McMorrow in *Tosado v. Miller*, 188 Ill. 2d 186, 201, 720 N.E.2d 1075 (1999) (McMorrow, J., dissenting, joined by Rathje, J.). *Tosado* involved two medical-malpractice suits against county hospitals and their employees, consolidated on appeal after the trial courts denied the defendants' motions to dismiss. *Tosado*, 188 Ill. 2d at 188, 720 N.E.2d at 1077. A plurality of the Illinois Supreme Court concluded the one-year limitations period in section 8—101 of the Tort Immunity Act governs medical-malpractice cases brought against local governmental entities and their employees, not the two-year limitations period for bringing medical-malpractice actions provided for in section 13—212(a) of the Code. *Tosado*, 188 Ill. 2d at 195-96, 720 N.E.2d at 1080-81.

Justice Miller, joined by Justice Bilandic, found that because either section 13—212(a) of the Code or section 8—101 of the Tort Immunity Act could apply to the plaintiffs' actions in the absence of the other, the appropriate inquiry was which of the statutes more specifically applied. *Tosado*, 188 Ill. 2d at 191, 720 N.E.2d at 1078. To answer that question, Justice Miller focused on the nature of the defendants, rather than the type of cause of action, and concluded section 8—101 of the Tort Immunity Act was more specific to the case before the court. *Tosado*, 188 Ill. 2d at 194, 720 N.E.2d at 1080.

Justice Heiple and Chief Justice Freeman, writing separately, agreed section 8—101 applied but disagreed the defendants' status was determinative. Rather, they noted "this is one of those instances where 'the legislature intended to make the general act controlling' " (*Tosado*, 188 Ill. 2d at 199, 720 N.E.2d at 1082 (Heiple, J., specially concurring), quoting *Stone v. Department of Employment Security Board*, 151 Ill. 2d 257, 266, 602 N.E.2d 808, 812 (1992), quoting 2B N. Singer, Sutherland on Statutory Construction §51.05, at 174 (5th ed.

1992)) and section 8—101 of the Tort Immunity Act "was designed to apply broadly to any possible claim against a local governmental entity and its employees" (*Tosado*, 188 Ill. 2d at 199, 720 N.E.2d at 1083 (Heiple, J., specially concurring)).

Just over a year later, the court faced a similar issue in *Ferguson*, 202 Ill. 2d at 306-07, 780 N.E.2d at 661-62: whether section 8—101 of the Tort Immunity Act or section 13—212(b) of the Code applied in a medical-malpractice action where the decedent's daughter was a minor at the time of the alleged malpractice but over 19 years old when the suit was brought on her behalf against Cook County and a county hospital's employees. Section 13—212(b) provides that where a person entitled to bring a medical-malpractice action was a minor at the time of the occurrence that allegedly caused the injury or death, the action must be brought within eight years of the occurrence but, in any event, no later than the person's twenty-second birthday. 735 ILCS 5/13—212(b) (West 2004).

The opinion adopted the reasoning from both *Tosado*'s plurality opinion and the special concurrences to conclude that section 8—101 applied. *Ferguson*, 202 Ill. 2d at 312, 780 N.E.2d at 665. Justice McMorrow again dissented, adhering to her position in *Tosado* and urging that employing the two positions in *Tosado* was "unpersuasive and may result in further uncertainty with respect to the appropriate analysis to be employed." *Ferguson*, 202 Ill. 2d at 315-16, 780 N.E.2d at 667 (McMorrow, J., dissenting, joined by Harrison, C.J., and Kilbride, J.).

The supreme court addressed this uncertainty in *Paszkowski*, 213 Ill. 2d 1, 820 N.E.2d 401, which Justice McMorrow authored. The question before the court was whether section 8—101 of the Tort Immunity Act or section 13—214(a) of the Code, which provides for a four-year limitations period for construction-related causes of action, applied to a negligence suit filed in early 2000 regarding injuries the plaintiff allegedly sustained in 1998 while working on a district construction project. *Paszkowski*, 213 Ill. 2d at 3, 8, 820 N.E.2d at 403, 406. *Paszkowski* held section 8—101 of the Tort Immunity Act controlled over section 13—214(a) of the Code:

"Regardless of whether section 13—214(a) is more specific than section 8—101 ***, it is the legislature's intent that is of foremost importance. [Citations.] *** According to *Ferguson*, 'the legislature intended that section 8—101 of the [Tort Immunity] Act apply *"broadly to any possible claim* against a local governmental entity and its employees."' (Emphases added.) [Citation.]" *Paszkowski*, 213 Ill. 2d at 12-13, 820 N.E.2d at 408.

The court concluded that "the comprehensive protection afforded by

section 8—101 necessarily controls over other statutes of limitation or repose." *Paszkowski*, 213 Ill. 2d at 13, 820 N.E.2d at 408.

*Paszkowski* clearly establishes that section 8—101 of the Tort Immunity Act applies to plaintiff's action. Accordingly, plaintiff's action was time barred and the trial court properly dismissed it on that basis.

## B. Equitable Estoppel

■ Alternatively, plaintiff argues defendant should be equitably estopped from asserting the limitations period. Equitable estoppel precludes a limitations defense " 'where [an insurer's] actions during negotiations are such as to lull the [plaintiff] into a false sense of security, thereby causing him to delay the assertion of his rights.' " *Mitchell*, 343 Ill. App. 3d at 285-86, 796 N.E.2d at 621, quoting *Hermanson v. Country Mutual Insurance Co.*, 267 Ill. App. 3d 1031, 1035, 642 N.E.2d 857, 860 (1994). Equitable estoppel in this context requires six elements: (1) the insurer misrepresented or concealed material facts through its words or conduct; (2) the insurer knew at the time it made the representations that they were not true; (3) the plaintiff did not know the truth about the representations both when they were made and when he acted on them; (4) the insurer intended or reasonably expected the plaintiff to act upon its conduct or representations; (5) the plaintiff, in good faith, reasonably relied upon the misrepresentation to his detriment; and (6) the plaintiff would be prejudiced if the insurer is permitted to assert the limitations period. See *Augustus v. Estate of Somers*, 278 Ill. App. 3d 90, 100, 662 N.E.2d 138, 145 (1996), citing *Vaughn v. Speaker*, 126 Ill. 2d 150, 162-63, 533 N.E.2d 885, 890 (1989).

■ "Conduct by [a] defendant's insurer can, in some instances, give rise to 'an apparent intent to pay the claim' which will estop a defendant from raising the statute of limitations as a defense." *Augustus*, 278 Ill. App. 3d at 100, 662 N.E.2d at 145, quoting *Vaughn*, 126 Ill. 2d at 165, 533 N.E.2d at 891. However, " '[c]ases in which an insurer's conduct is found to amount to estoppel typically involve a concession of liability by the insurer, advance payments by the insurer to the plaintiff in contemplation of eventual settlement, and statements by the insurer which encourage the plaintiff to delay filing his action.' " *Mitchell*, 343 Ill. App. 3d at 286, 796 N.E.2d at 621, quoting *Foamcraft, Inc. v. First State Insurance Co.*, 238 Ill. App. 3d 791, 795, 606 N.E.2d 537, 540 (1992). "[T]he mere pendency of negotiations conducted in good faith is insufficient to give rise to estoppel." *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 515, 571 N.E.2d 209, 216 (1991). For example, in *Viirre*, the defendant was not equitably

estopped from asserting the statute of limitations as a defense even though its insurer investigated the plaintiff's claim, collected the plaintiff's medical bills and records, sent a check for some of the plaintiff's medical expenses, referred the case for mediation, and hired attorneys to conduct discovery. *Viirre*, 212 Ill. App. 3d at 513-14, 571 N.E.2d at 215.

■ Viewing the evidence regarding the communication between plaintiff's attorney and the insurance company's claim representative in the light most favorable to plaintiff, we cannot infer that the insurance company's conduct was calculated to lull plaintiff into a reasonable belief that plaintiff's claim would be settled without suit. Nothing suggests the insurance company misrepresented its position or intended or reasonably expected plaintiff to delay filing suit regarding the collision. Plaintiff did not allege in his amended complaint and Geisler did not attest in his affidavit that either Kalfen or King conceded liability for the collision or indicated the insurance company intended to settle plaintiff's claim. Rather, the insurance company's failure to respond to plaintiff's settlement demand could just as easily be interpreted to mean it was still considering the demand or did not intend to pay it.

Geisler's statement that no one from the insurance company contended it would assert the Tort Immunity Act's limitations period until after the period had run does not show the insurance company intended or expected plaintiff to delay filing suit. The affidavits reveal Geisler did not know school-bus collisions were covered by the one-year limitations period. Nothing indicates that the insurance company knew of Geisler's mistake concerning the applicable limitations period, and it had no duty to inform Geisler of the applicable period. Therefore, the trial court did not err in rejecting plaintiff's equitable-estoppel argument and dismissing plaintiff's amended complaint.

### C. Equitable Tolling

Finally, plaintiff urges the limitations period was equitably tolled. The Illinois Supreme Court wrote in *Clay v. Kuhl*, 189 Ill. 2d 603, 614, 727 N.E.2d 217, 223 (2000), that "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." In *Fidelity National Title Insurance Co. of New York v. Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006), Judge Posner noted that whether Illinois recognizes equitable tolling is still unresolved because the Illinois cases mentioning the term seem to mean equitable estoppel.

However, Judge Posner guessed that Illinois would accept the "commonplace" and "sensible" tolling doctrine. *Fidelity*, 436 F.3d at 839.

■ According to the Seventh Circuit, equitable tolling, unlike equitable estoppel, applies even when the defendant is faultless. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). Where the plaintiff cannot reasonably be expected to sue in time because of disability, irremediable lack of information, or other circumstances beyond his control, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit. *Miller*, 77 F.3d at 191. For example, equitable tolling postpones the deadline for suing if a plaintiff cannot discover his injurer's identity within the statutory period despite the exercise of reasonable diligence. *Fidelity*, 436 F.3d at 839.

■ Under either the formulation previously articulated by the Illinois Supreme Court or the Seventh Circuit's approach, plaintiff's equitable-tolling argument fails. No extraordinary circumstances prevented him from filing suit. Making a settlement demand alone does not toll the limitations period. Plaintiff's attorney's apparent mistake regarding the applicable limitations period also does not implicate equitable tolling; his lack of information was not "irremediable" as he could have discovered the correct filing deadline with some further research.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., and MYERSCOUGH, J., concur.